UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 17-cr-00216 (01-02) |
| VERSUS | CHIEF JUDGE HICKS |
| EMICEL ARTIGAS GARCIA (01)<br>ADALBERTO RAMOS CUELLAR (02) | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Before the court are **Motions to Suppress (Docs. 39 and 40)** filed by defendants Emicel Artigas Garcia ("Artigas") and Adalberto Ramos Cuellar ("Ramos"). Defendants are charged with conspiracy to commit wire fraud; wire fraud; aggravated identity theft; and possession of 15 or more counterfeit or unauthorized access devices. For the reasons that follow, it is recommended that Defendants' motions to suppress be **denied**.

**Facts**

An evidentiary hearing was held in connection with Defendants' motions on December 6, 2017. The evidence at the hearing establishes the following facts. Detective Chad Sepulvado ("Sepulvado") of the Bossier City Police Department testified that he recently had been inundated with identity theft cases, the majority of which involved the unauthorized use of credit card numbers at a Wal-Mart in Bossier City. Tr. 27. Sepulvado testified that the stolen credit card numbers were usually obtained by the use of skimming devices installed in gas station pumps. Id.

Because of the uptick in these types of cases, Sepulvado paid a visit to the Wal-Mart and spoke to Robert McElroy ("McElroy"), a Wal-Mart loss prevention associate. Sepulvado spoke with McElroy regarding identity theft, and he advised McElroy how to spot perpetrators of these offenses and to call him if he noticed anything suspicious. Tr. 7. Later that same day, McElroy noticed a Hispanic man at a self-checkout station in Wal-Mart swiping many different credit cards. Tr. 8. McElroy saw the man balling up his many receipts and hiding them in a nearby potato chip rack. Tr. 13.

McElroy testified that the man had been there for approximately 20 minutes, which McElroy found suspicious, because most customers make a quick purchase at the self-checkout and leave. Tr. 23-24. McElroy called Sepulvado and reported what he had seen. He also described what the man looked like and what he was wearing. Tr. 10. He advised that a second Hispanic man, wearing a black baseball cap, was with the man. Tr. 32.

McElroy and Sepulvado spoke again by telephone just as the suspicious man was about to leave Wal-Mart. Tr. 14. McElroy informed Sepulvado that the man was exiting the general merchandise doors, wearing a green T-shirt and a ball cap, and he was pushing a buggy containing lawn chairs. Tr. 32. As Sepulvado arrived near those doors of the Wal-Mart, he saw a man meeting that description about 20 yards away from the exit door. McElroy also pointed the man out to Sepulvado. Tr. 15.

As Sepulvado made contact with the suspect, who later turned out to be Artigas, Sepulvado saw multiple gift card sleeves sticking out of Artigas's front pockets. Based on the information provided to Sepulvado by McElroy, and then seeing the multiple gift cards, Sepulvado believed that Artigas was involved in a credit card skimming operation. Tr. 69.

Sepulvado placed Artigas under arrest. Sepulvado then removed Artigas's wallet from his pocket and located Artigas's ID card and numerous credit cards.

Sepulvado removed a key fob from Artigas's pocket and used the alarm button on the key fob to locate Artigas's vehicle. Sepulvado testified that credit card skimming is a complicated process requiring a number of tools and steps to make it possible. Tr. 39-40. Sepulvado believed that there would be other evidence associated with Artigas's crimes in Artigas' vehicle.

The key fob allowed Sepulvado to locate Artigas's vehicle. Defendant Ramos was sitting in the passenger front seat of the vehicle with his legs hanging out of the door. In front of Ramos was a black baseball cap sitting on the vehicle's dashboard. Sepulvado removed Ramos from the vehicle and conducted a Terry pat-down. Sepulvado suspected that this person was the man that McElroy told him was with Artigas. Tr. 14.

During a pat-down of Ramos, Sepulvado removed Ramos's wallet. Sepulvado opened the wallet and found numerous credit cards. Once Defendants were arrested, Artigas' vehicle was impounded. A search warrant was obtained three days later, and additional evidence of criminal activity was found in the vehicle. Tr. 72.

**Motions to Suppress**

Defendants argue that Sepulvado lacked reasonable suspicion or probable cause to detain them and conduct pat-down searches; that the searches of their pockets and vehicle were not supported by a warrant and were per se unreasonable; that using the key fob to search for Artigas's vehicle went far beyond a Terry stop and pat-down for safety; and there were no exigent circumstances, so a search warrant should have been obtained.

**Analysis**

    **A. Reasonable Suspicion to Detain**

Under the Fourth Amendment, police officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot. <u>United States v. Mitchelletti</u>, 13 Fd.3d 838, 840 (5th Cir. 1994). Reasonable suspicion exists if there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a detention. <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968). Whether reasonable suspicion exists is an objective inquiry that turns on whether the circumstances, viewed objectively, justify the challenged action. <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978).

The information provided by McElroy to Detective Sepulvado was more than enough to give Sepulvado reasonable suspicion that Artigas and Ramos were engaging in illegal activity. McElroy said that Artigas was at the self-checkout register for an exceptionally long time and "steady swiping" many different credit cards. He was also balling up all of his receipts and hiding them in a nearby potato chip rack. Artigas was engaging in the exact kind of behavior that Sepulvado had told McElroy earlier that day to watch out for due to identity theft and unauthorized use of credit cards. McElroy also told Sepulvado that another Hispanic male (Ramos) was with Artigas and was wearing a black baseball cap. Based on everything Detective Sepulvado knew, it was reasonable for him to suspect that the Hispanic males were engaged in illegal activity.

Sepulvado soon located Artigas's vehicle. He saw Ramos sitting in the front seat with the black baseball cap on the dash in front of him. The totality of the facts gave

Detective Sepulvado reasonable suspicion that Ramos was also involved with Artigas in the commission of the crimes.

### B. The Search of Artigas's Wallet

The search of Artigas's wallet is justified as a search incident to an arrest. Law enforcement officials may arrest an individual in a public place without a warrant if they have probable cause to believe that the individual committed a felony. United States v. Clark, 647 Fed. Appx. 419, 421 (5th Cir. 2016), citing United States v. Garcia, 179 F.3d 265, 268 (5th Cir. 1999). And probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been, or is being, committed and that the individual arrested is the guilty party. Clark, 647 Fed. Appx. at 421. When Sepulvado saw the gift cards sticking out of Artigas's front pockets, Sepulvado's reasonable suspicion ripened into probable cause to arrest Artigas for his involvement in credit card skimming or some stage of it. Tr. 69.

Once police make a lawful arrest, a full search of a person incident to the arrest requires no additional justification and constitutes a reasonable search under the Fourth Amendment. Clark, 647 Fed. Appx. at 423, citing United States v. Robinson, 94 S.Ct. 467 (1973). Detective Sepulvado placed Artigas under arrest (Tr. 70), then he searched Artigas's wallet and located his ID. Id. He also discovered additional credit cards in Artigas's wallet. Given the nature of the crimes that Sepulvado believed Artigas had committed, it was entirely reasonable for Sepulvado to search Artigas's wallet because of the high likelihood that the wallet would contain important evidence regarding Artigas's financial crimes. In United States v. Castro, 596 Fd.2d 674, 676 (5th Cir. 1979), the Fifth

Circuit held that a search incident to arrest can include the inspection of the contents of an arrestee's wallet.

### C. The Key Fob

Sepulvado located Artigas's vehicle (and Ramos) by removing Artigas's key fob from his pocket and pushing the alarm button. In United States v. Dasinger, 650 Fed.Appx. 664, 671 (11th Cir. 2016), the Eleventh Circuit assumed, without deciding, that a police officer's handling of keys and a key fob was a search or seizure under the Fourth Amendment. However, under the totality of the circumstances in that case, the court found that the manipulation of the keys and key fob was not an unreasonable search and seizure in violation of the Fourth Amendment. To the extent the driver had a privacy interest in the identity of his car, that interest was outweighed by the officers' legitimate interest in investigating the signs of criminal activity.

In United States v. Cowan, 674 Fd.3d 947 (8th Cir. 2012), a detective used a key fob to locate a vehicle outside of an apartment building. The Eighth Circuit stated that there was no reasonable expectation of privacy in the identity of the vehicle. The court also stated that pressing the alarm button on the key fob was a way to identify the car, and doing so did not tell the officers anything about the fob's code or the car's contents.

Detective Sepulvado believed that, in light of the criminal activity committed by Artigas, Artigas's vehicle would contain additional evidence and instrumentalities of credit card skimming and identity theft. Under these circumstances, Sepulvado's manipulation of the key fob was not an unreasonable search or seizure in violation of the Fourth Amendment.

### D. The Search of Ramos's Wallet

Ramos argues that there were no exigent circumstances or other justification for searching and seizing items in his possession, including his wallet, without a warrant. The undersigned finds, based on the totality of the circumstances, that Sepulvado had ample probable cause to arrest Ramos and conduct a warrantless search of his wallet. Sepulvado knew that similar schemes were being used by suspects at the Bossier City Wal-Mart. He knew from information provided to him by McElroy that Artigas and Ramos were together; he knew from McElroy that Ramos was wearing a black baseball cap; and he knew that Ramos was sitting inside the vehicle owned or controlled by Artigas. Based on those facts, it was reasonable for Sepulvado to believe that Ramos was involved in committing an offense or had conspired to commit an offense with Artigas. The search of Ramos's wallet is justified as a search incident to his arrest. Castro, supra.

**Conclusion**

The searches of Artigas, Ramos, and their wallets were supported by probable cause that they were involved in a credit card skimming operation and the unauthorized use of credit card numbers at the Wal-Mart in Bossier City. Neither Defendant's Fourth Amendment rights were violated.

Accordingly;

**IT IS RECOMMENDED** that Defendants' **Motions to Suppress (Docs. 39 and 40)** be **denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of February, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge